UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA ANN KNOX, <br><br> Plaintiff, <br><br> v. <br><br> CAROLYN W. COLVIN, Acting Commissioner of Social Security, <br><br> Defendant. | No.  2:12-cv-02413 AC <br><br><br> ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act").  The parties' cross-motions for summary judgment are pending.  For the reasons discussed below, the court grants plaintiff's motion for summary judgment, denies defendant's motion for summary judgment, and remands the matter for further proceedings.

I.  BACKGROUND

Plaintiff filed an application for SSI on July 26, 2007, alleging disability beginning December 1, 2003.  Administrative Record ("AR") 113-16.  Plaintiff's application was initially denied on October 4, 2007, and again upon reconsideration on October 30, 2008.  AR 50-53, 62-67.  On February 22, 2010, a hearing was held before administrative law judge ("ALJ") Gerardo Mariani.  AR 22-44.  Plaintiff appeared without representation at the hearing, at which plaintiff,

1

third party witnesses, and a vocational expert ("VE") testified. AR 22-44. In a decision dated April 12, 2010, the ALJ determined that plaintiff was not disabled under 1614(a)(3)(A) of the Act.[1] AR 11-17. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant has not engaged in substantial gainful activity since June 26, 2007, the application date.
>
> 2. The claimant has the following severe impairments: right hip pain status post surgery, bilateral carpal tunnel syndrome, fibromyalgia syndrome, a bipolar disorder and post traumatic stress disorder.
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 4. After careful consideration of the entire record, I find that the

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).
   The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

2

claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except the claimant can occasionally climb ramps and stairs, but she cannot climb ladders, ropes or scaffolds.  She can occasionally kneel, crouch and crawl.  She can frequently handle, finger and feel with both hands.  She can understand, remember and carry out simple instructions.

5.  The claimant is unable to perform any past relevant work.

6.  The claimant was born May 7, 1972 and was 35 years old, which is defined as a younger individual age 18-44, on the date the application was filed.

7.  The claimant has at least a high school education and is able to communicate in English.

8.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

9.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10.  The claimant has not been under a disability, as defined in the Social Security Act, since June 26, 2007, the date the application was filed.

AR 11-17.

Plaintiff requested the Appeals Council review the ALJ's decision.  AR 1-6.  However, on March 23, 2012, the Appeals Council denied review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security.  AR 1.

II.   LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied.  Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive.  See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  "It means such evidence as a reasonable mind might accept as adequate to support a

conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).

III.   ANALYSIS

Plaintiff argues that the ALJ erred by (1) failing to properly develop the record, (2) failing to properly consider medical opinion evidence, (3) failing to credit plaintiff's testimony, and (4) rejecting third party testimony without legitimate reasons.

   A.   Duty to Develop the Record

Plaintiff first contends that the ALJ erred because he did not properly inform plaintiff of the right to counsel and how advantageous representation is for claimants. Pl.'s Mot. for Summ. J. ("P's MSJ") at 18-19. When seeking disability benefits, a claimant has a statutory right to be represented by counsel. 20 C.F.R. §§ 416.1500, 416.1503, 416.1505. The Commissioner is required to "notify each claimant in writing . . . of the options for obtaining attorneys to represent individuals in presenting their cases before the Commissioner . . . ." 42 U.S.C. § 406(c). See 20 C.F.R. § 416.1506. "Lack of counsel does not affect the validity of the hearing and hence warrant remand, unless the claimant can demonstrate prejudice or unfairness in the administrative proceedings." Vidal v. Harris, 637 F.2d 710, 713 (9th Cir. 1981).

Plaintiff's argument that the ALJ did not fully inform her of her right to have counsel present at the hearing is unavailing. Plaintiff was provided notice on several occasions of her right to have an attorney. She was sent pamphlets on four occasions prior to her hearing detailing her right to counsel. AR 56-61, 69-75, 78-84, 96-103. Three weeks before the hearing, plaintiff was informed her attorney could not represent her. AR 24. However, she did not obtain new representation or reschedule the hearing to do so.[2] AR 24. Then, at the hearing, the ALJ

---

[2] The Commissioner argues that the original hearing was delayed to accommodate plaintiff's

suggested the hearing be postponed to give plaintiff "another chance to get a representative." AR 26. However, plaintiff decided that she "could go ahead and testify today…" AR 27. The hearing was then conducted and plaintiff remained unrepresented. AR 24-44. Given that plaintiff received numerous notices concerning her right to representation, and the ALJ was prepared to give her more time, the absence of representation at the February 22, 2010 hearing is attributable to plaintiff, not the Commissioner. See Moua v. Astrue, No. ED CV 07–0945–VBK, 2008 WL 2227357, *3 (C.D. Cal. May 27, 2008) (plaintiff was not denied her right to counsel when provided with adequate notice of the right and had the hearing postponed to allow her to find representation). Plaintiff then argues the ALJ did not explain the "uphill battle" she was facing without an attorney. P's MSJ at 19. In support of plaintiff's contention that the ALJ was required to explain advantages of proceeding with counsel, plaintiff's brief recites an excerpt from Congressman Robert Matsui's testimony espousing the difficulties claimants face when not represented by counsel and data to confirm his premise. Id. However poignant the Congressman's testimony, plaintiff provides no law showing the ALJ has the responsibility to inform her of the odds and problems she faced without an attorney.

Plaintiff also contends the ALJ failed to properly develop the record by not eliciting relevant testimony from the VE, and by failing to note the discrepancy between the VE's testimony and the Dictionary of Occupational Titles ("DOT"). "The ALJ in a social security case has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996)) (internal quotes omitted). Although this duty is present regardless of whether claimant is represented, the ALJ must be especially diligent in exploring for all the relevant facts when claimant is unrepresented. Id. However, this obligation "is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459-60 (9th

---

request to retain counsel, and the hearing transcript does seem to establish that rescheduling occurred. AR 24. However, this is not verified through her cite to the record. Def.'s Mot. Summ. J. ("D's MSJ") at 14.

5

Cir. 2001).

Plaintiff argues the ALJ failed to properly develop the record by not eliciting relevant testimony from the VE. P's MSJ at 20. The ALJ has a duty to makes findings as to which limitations exist and is only required to include in his hypotheticals posed to the VE those limitations he or she finds to be supported by the evidence of record. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (the ALJ did not err in omitting limitations that claimant argued, but failed to prove). Therefore, an "ALJ need not include all claimed impairments in his hypotheticals," provided he "make[s] specific findings explaining his rationale" for not including limitations he finds unsupported by the record. Light v. Social Sec. Admin., 119 F.3d 789, 793 (9th Cir. 1997).

Plaintiff contends that the ALJ's hypothetical failed to include limitations assessed by Dr. Sharma, including that plaintiff could only occasionally hold, feel, and finger objects with both hands. P's MSJ at 20; see AR 369. Plaintiff argues that she did not "know enough to ask her own hypothetical," including these limitations. P's MSJ at 20. However, even if she had been represented by counsel, the ALJ does not have to accept as true "the restrictions presented in a hypothetical question propounded by a claimant's counsel." See Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989). Here, the ALJ rejected Dr. Sharma's opinion. Accordingly, the ALJ was not required to pose a hypothetical including these limitations so long as he properly explained his rationale for not including the limitations assessed by Dr. Sharma. See Light, 119 F.3d at 793. However, as discussed below, the ALJ erred by failing to provide specific and legitimate reasons for rejecting Dr. Sharma's opinion, and therefore the limitations the ALJ found to exist are not supported by substantial evidence. See Rollins, 261 F.3d at 857.

Plaintiff finally contends the ALJ failed to properly develop the record by not asking the VE if there was a discrepancy between the VE's testimony and the DOT. P's MSJ at 20. Under Social Security Ruling 00–4p, the ALJ must ask whether a VE's testimony is consistent with the DOT and to "obtain a reasonable explanation for any apparent conflict." Massachi v. Astrue, 486 F.3d 1149, 1152–53 (9th Cir. 2007) (remanding to the ALJ to perform a SSR 00-4p inquiry). But such a procedural error may be harmless if there is no actual or apparent conflict between the

VE's testimony and the DOT. See id. at 1154 n.19. The party seeking to overturn an administrative agency's decision has the burden of showing harmful error. Shinseki v. Sanders, 556 U.S. 396, 409-10 (2009).

At plaintiff's hearing the VE testified that, based on the ALJ's RFC determination, plaintiff could perform work as a call-out operator or bindery worker. AR 42-43. The ALJ did not, however, ask the VE whether this testimony was consistent with the DOT, AR 22-44, a point which defendant concedes, D's MSJ at 15-16. Plaintiff provides a detailed discussion of the functional abilities required for call-out operators. P's MSJ at 17-19. Defendant responds with a detailed analysis of the educational development requirements for the position, and contends that there is no conflict. Even assuming plaintiff is correct that there is a conflict between the VE's testimony and the DOT for call-out operators, however, the VE also testified that plaintiff could perform work as a bindery worker. AR 42. Plaintiff does not allege a conflict between the VE's testimony and the DOT description for bindery worker. Because there is a job other than call-out worker for which plaintiff qualifies for and which she can perform, plaintiff has failed to show that the alleged error was harmful. See Shinseki, 556 U.S. at 409-10.

In sum, the ALJ gave plaintiff proper notice of her right to counsel, and the discrepancy between the VE's testimony and the DOT was, at most, harmless error. However, the ALJ failed to properly elicit relevant testimony from the VE. As discussed below, this error was not harmless.

B. The ALJ erred in rejecting medical opinion evidence without explanation.

Plaintiff contends that the RFC, used to pose a hypothetical to the VE, did not include the opinions of Drs. Jacobs, Sharma, or Kemp.[3]  D's MSJ at 23-24. It is the ALJ's responsibility to determine the RFC. See e.g., Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001). Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in

---

[3] Defendant misstates plaintiff's position, saying she argues the ALJ must credit all of the opinions given by state agency physicians. D's MSJ at 18. However, plaintiff argues that although the ALJ purports to adopt these opinions, he does not incorporate them into his RFC determination. P's MSJ at 23. This amounts to a rejection of the opinions and requires explanation of the ALJ's reasons for doing so.

7

the decision the weight given to the opinions of any treating sources, nontreating sources, and other nonexamining sources. 20 C.F.R. § 416.927. "The RFC assessment must always consider and address medical source opinions." SSR 96-8P. "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." Id. "And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Lester, 81 F.3d at 830-31 (citing Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995)). A non-examining physician's opinion may be rejected "by reference to specific evidence in the medical record." Sousa v. Callahan, 143 F.3d 1240, 1244 (9th Cir. 1998).

Dr. Jacobs, a non-examining physician, opined that plaintiff's mental impairments caused moderate limitations in both her ability to complete a normal workday and workweek without interruptions, and in her ability to interact appropriately with the general public. AR 395-96. Dr. Kemp, an examining physician, opined that plaintiff was mildly impaired in her ability to regularly attend work; that her ability to function socially, and deal with changes at work were both moderately impaired; and that her ability to work in a safe manner, and to do complex and repetitive tasks were moderately impaired because of anxiety. AR 362. The record also contained an examining physician's opinion concerning plaintiff's physical limitation. Dr. Sharma was of the opinion that plaintiff was limited to occasionally holding, feeling, and fingering object with her hands. AR 369. The ALJ's discussion of the opinion evidence consisted of one sentence: "As for the opinion evidence, weight is given to the reports of the state agency medical consultants, but the residual functional capacity was reduced to compensate for restriction imposed by problems that the claimant may be having ambulating because of residual problems with her right hip." AR 16.

Although the ALJ purported to give "weight" to the opinion evidence, his RFC determination stated in its entirety:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 416.967(a) except

8

> the claimant can occasionally climb ramps and stairs, but she cannot climb ladders, ropes or scaffolds. She can occasionally kneel, crouch and crawl. She can frequently handle, finger and feel with both hands. She can understand, remember and carry out simple instructions.

AR 14-15.

The ALJ erred in determining plaintiff's mental limitations. The only mental limitation specified in the RFC is plaintiff's ability to, at most, "understand, remember and carry out simple instructions." AR 15. By including this limitation in the RFC, and by the ALJ's use of Dr. Jacobs' wording in this regard (see AR 397), the ALJ did in fact adopt the doctor's opinion. See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174-75 (9th Cir. 2008) (ALJ's finding that plaintiff could do "simple tasks" incorporated plaintiff's pace and mental limitations). Therefore, he did not need to provide reasons for rejecting it. See Sousa, 143 F.3d at 1244.

However, the mental limitations found by Dr. Kemp were rejected in largest part by the ALJ's RFC determination. The RFC analysis stated that plaintiff had moderate impairment in the areas of attention and socialization. AR 16. This finding may be accounted for in the "simple instructions" RFC determination and amount to adoption of part of Dr. Kemp's opinion. See Stubbs-Danielson, 539 F.3d at 1174-75. However, the ALJ did not consider plaintiff's ability to regularly attend work, or to do work activities in a safe manner.[4] AR 15-16. Because these limitations were not included in the RFC, Dr. Kemp's opinion regarding plaintiff's impairments in these areas were necessarily rejected. Smolen v. Chater, 80 F.3d 1273, 1286 (9th Cir. 1996) (failing to discuss doctors' opinions and making contrary findings effectively rejects those opinions, constituting legal error). The rejection of an examining doctor's opinion must be for specific and legitimate reasons, supported by substantial evidence in the record. See Lester, 81 F.3d at 830-31. Since the ALJ gave no reasons, the court cannot find that "specific and legitimate reasons" were provided for rejecting the doctor's opinion. This improper rejection constitutes sufficient error warranting remand.

The ALJ further erred in determining plaintiff's physical limitations. He specifically

---

[4] The ALJ did consider these limitations in finding that she had severe impairments at step two. AR 13-14. However, this merely creates more problems for the ALJ since he failed to consider all impairments, including non-severe impairments, in the remaining steps of the sequential analysis, as required. See Smolen, 80 F.3d at 1290.

found plaintiff could "*frequently* handle, finger and feel with both hands." AR 15 (italics added). Dr. Sharma's opinion was plaintiff was limited to *occasionally* holding, feeling, and fingering objects with her hands. AR 369. Because the limitation found by Dr. Sharma was not included in the RFC, it was necessarily rejected. See Smolen, 80 F.3d at 1286. This rejection of an examining doctor's opinion can only be for specific and legitimate reasons, supported by substantial evidence in the record. See Lester, 81 F.3d at 830-31. It cannot be argued that "specific and legitimate reasons" were given for rejecting the doctor's opinion, as none were given.

Because the ALJ rejected Dr. Kemp and Dr. Sharma's opinions without reason, the undersigned will remand this action so that the ALJ may properly consider the medical evidence in determining the RFC. Because remand is necessary for further consideration of the medical evidence, the court declines to consider plaintiff's additional arguments.[5]

IV.   CONCLUSION

The court finds that the ALJ's decision was not supported by substantial evidence. The ALJ failed to properly consider the medical evidence of record, which adversely impacted the questions posed to the VE. Thus, the matter must be remanded for further consideration so that the ALJ may properly consider the medical evidence in determining the RFC.

Therefore, IT IS ORDERED that:

1. Plaintiff's motion for summary judgment, ECF No. 20, is granted;

2. The Commissioner's cross-motion for summary judgment, ECF No. 23, is denied;

3. This action is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this order; and

////

////

---

[5] However, the court notes that the ALJ's opinion makes no reference to testimony provided by third parties. The ALJ must either expressly disregard lay testimony and give reasons germane to each witness for doing so, see Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001), or properly discuss competent lay testimony, see Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1056 (9th Cir. 2006).

4. The Clerk is directed to enter judgment in plaintiff's favor.

DATED: July 9, 2013

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE